UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

WAY OF GRACE MINISTRIES, INC.,          Case No. 6:11-bk-15664-KSJ
                                        Chapter 11

       Debtor.
_____/

## DEBTOR'S DISCLOSURE STATEMENT, DATED 2/15/12

### I.    INTRODUCTION

This is the disclosure statement (the "Disclosure Statement") in the chapter 11 case of Way of Grace Ministries, Inc. (the "Debtor"). This Disclosure Statement contains information about the Debtor and describes the Debtor's Plan of Reorganization, Dated 02/14/12 (the "Plan") (Document no. 41) and filed by the Debtor on February 14, 2012.

**Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.**

#### A.  *Purpose of This Document*

This Disclosure Statement describes:

·     The Debtor and significant events during the bankruptcy case,
·     How the Plan proposes to treat claims or equity interests of the type you hold (i.e., what you will receive on your claim or equity interest if the plan is confirmed),
·     Who can vote on or object to the Plan,
·     What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,
·     Why the Debtor believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and
·     The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

#### B.  *Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing*

The Court has not yet confirmed the Plan described in this Disclosure Statement. This

section describes the procedures pursuant to which the Plan will or will not be confirmed.

Typically, upon the filing of a disclosure statement, the Court will enter an Order conditionally approving the disclosure statement, scheduling a hearing on the disclosure statement and confirmation of the plan of reorganization, fixing the time for filing fee and other administrative expense applications, and fixing the time for filing acceptances or rejections of the plan.   The Debtor anticipates that such an Order will be entered in this case.   When the Order is entered the Debtor will serve a copy of the Order, the Plan and the Disclosure Statement on all interested parties.

If you are entitled to vote to accept or reject the plan, you will be provided with a ballot along with the other documents.   You will be asked to return the ballot to the Clerk of the Court whose address will be printed at the bottom of the ballot.   See section IV.A. below for a discussion of voting eligibility requirements.

Your ballot must be received by the deadline which will be printed on the ballot, or it will not be counted.

C.    ***Deadline For Objecting to the Adequacy of Disclosure and Confirmation of the Plan***

Objections to this Disclosure Statement or to the confirmation of the Plan must be filed with the Court and served upon various entities.   The deadline for objections and the identities of the entities that must be served with them will be included in the Order scheduling the hearing to finally approve the disclosure statement and confirm the plan.

D.    ***Identity of Person to Contact for More Information***

If you want additional information about the Plan, you should contact undersigned counsel for the Debtor:

> Kenneth D. (Chip) Herron, Jr.
> Wolff, Hill, McFarlin & Herron, P. A.
> 1851 W. Colonial Drive
> Orlando, FL 32801
> Phone: 407-648-0058
> Fax:    407-648-0681
> Email: kherron@whmh.com

E.  **Disclaimer**

Although the Court will likely conditionally approve this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms, the Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, nor a recommendation that it be

accepted.   Any conditional approval of this Disclosure Statement is subject to final approval at a later hearing, most likely the same hearing where the Court will consider confirmation of the Plan. Objections to the adequacy of this Disclosure Statement may be filed until a date to be announced in an Order as discussed above.

    II.    **BACKGROUND**

    A.    *Description and History of the Debtor's Business*

The Debtor is a non-denominational Christian church located at 8550 Clarcona Ocoee Road, Orlando, Florida 32818.   The Debtor holds services on Sundays at 10:00 am and 11:00 am with some weekday ministry meetings.   In addition to the church services, the Debtor also operates a school known as Way of Grace Academy & Learning Center for pre-school age children through 6th grade.   The Debtor owns the Church Property.

    B.    *Insiders and Management of the Debtor Before and During Bankruptcy*

Richard W. Grant serves as the President of the Debtor.   On November 9, 2011, 2011, the Court entered an Order Granting Debtor's Motion for Authority to Compensate Officers and Insiders of the Debtor (Doc. No. 32), authorizing Richard W. Grant to receive compensation from the Debtor of $1,000 per week.   Mr. Grant will continue to receive this compensation post confirmation.

    C.    *Events Leading to Chapter 11 Filing*

The Church Property was subject to a mortgage foreclosure action pending in Circuit Court in Orange County, Florida.   The bankruptcy case was filed to give the Debtor an opportunity to modify the terms of the existing mortgage so that the Debtor can continue to operate.

    D.    *Projected Recovery of Avoidable Transfers*

The Debtor is not aware of any avoidance actions.

    E.    *Claims Objections*

Except to the extent that a claim is already allowed pursuant to a final non-appealable Order, the Debtor reserves the right to object to claims.   Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld.   The procedures for resolving disputed claims are set forth in Article 6 of the Plan.

III.    **SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**

      *A.    What is the Purpose of the Plan of Reorganization?*

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive.   The Plan also states whether each class of claims or equity interests is impaired or unimpaired.   If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

      B.    *Unclassified Claims*

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan.   They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.   As such, the Plan Proponent has not placed the following claims in any class:

      i.    *Administrative Expenses.*

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 507(a)(2) of the Code.   Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition.   The Code requires that all administrative expenses be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses, and their proposed treatment under the Plan:

| TYPE | ESTIMATED AMOUNT OWED | PROPOSED TREATMENT |
|---|---|---|
| Attorney's Fees, as approved by the Court, to Wolff, Hill, McFarlin & Herron, P.A. | It is estimated that the total fees due will not exceed the retainer by more than $10,000 | These amounts will be paid in full on the Effective Date unless agreed otherwise. |
| Clerk's Office Fees | $0.00 | Paid in full on the Effective Date of the Plan |
| Office of the U.S. Trustee Fees | $0.00 | Paid in full on the Effective Date of the Plan |
| **TOTAL** | Estimated $10,000 | |

4

    *ii.  Priority Claims*

The Debtor is not aware of any priority claims.

C.  ***Classes of Claims and Equity Interests***

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

    Class 1.  <u>The Fifth Third Claim</u>.

    The holder of the Fifth Third Claim shall:

    a.  retain the lien securing the claim, and

    b.  the Debtor shall pay the holder of the Fifth Third Claim, which is which is $1,347,906.28 (proof of claim number 2), as follows:

      i.  The Fifth Third Claim shall be fully amortized over a period of twenty five (25) years at the U. S. Prime Interest Rate as reported by the Wall Street Journal (the "Prime Rate) on the Effective Date plus 2.0%.   If the current Prime Rate is in effect on the Effective Date, then the interest rate will be 5.25% (the Prime Rate is currently 3.25%) and the monthly payment will be $8,077.30;

      ii.  Per section i. above, the Debtor shall make equal monthly payments of $8,077.30 commencing on the 15th day of the next full month following the Effective Date and continuing on the 15th day of each month thereafter.   For example, if the Effective Date is May 10, then the first payment is due on June 15.

      iii.  All amounts due to the holder of the holder of the Fifth Third Claim shall be due and payable 25 years from the Effective Date.

    <u>Class 2</u>.  All Allowed Unsecured Claims.

    The Debtors will pay all Allowed Unsecured Claims in full over 5 years, without interest, in equal monthly installments.   The Debtor will make monthly payments to the holders of Allowed Secured Claims on a pro-rated basis.   Payments will commence 30 days after the Effective Date and will be made on the same day of each month thereafter for period of 5 years.

D.  ***Means of Implementing the Plan***

    1.  *Payments and distributions under the Plan will be funded as follows:*

5

(a) the payments for administrative expenses, to the extent needed, will be funded from cash on hand, and

(b) all other plan payments will be paid from tithes and offerings, and from income from operation of the Debtor's school.

2.    *Post-confirmation Management*

Richard W. Grant will serve as the President of the Debtor post-confirmation for purposes of executing any documents necessary to effectuate the Plan.   He will receive his normal salary of $1,000 per week for his services.

IV.  **CONFIRMATION REQUIREMENTS AND PROCEDURES**

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code.   These include the requirements that:   the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible.   These requirements are not the only requirements listed in § 1129, and they are not the only requirements for confirmation.

A.    ***Who May Vote or Object***

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan.   A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent contends that only Class 3 is impaired and that holders of claims in that class are therefore entitled to vote to accept or reject the Plan.   The Plan Proponent believes that other classes are unimpaired and that holders of claims in each of these classes, therefore, do not have the right to vote to accept or reject the Plan.

1.    *What Is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan.   Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest.   When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity

6

interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

The deadline for filing a proof of claim in this case for creditors other than governmental units was February 14, 2012.   The deadline for filing a proof of claim by governmental units is 180 days from the Petition Date.   Since the Petition Date was November 14, 2011, the deadline is April 12, 2012.

2.    *What Is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is impaired under the Plan.   As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

3.    *Who is Not Entitled to Vote*

The holders of the following five types of claims and equity interests are not entitled to vote:

   a.  holders of claims and equity interests that have been disallowed by an Order of the Court;
   b.  holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes;
   c.  holders of claims or equity interests in unimpaired classes;
   d.  holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code;
   e.  holders of claims or equity interests in classes that do not receive or retain any value under the Plan; and
   f.  holders of administrative expense claims.

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan [and to the Adequacy of the Disclosure Statement].***

4.    Who Can Vote in More Than One Class.

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

B.    ***Votes Necessary to Confirm the Plan***.

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class,

7

and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by a cramdown on non-accepting classes, as discussed later in Section B. 2.

1.    *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

2.    *Treatment of Non-accepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds non-accepting classes is commonly referred to as a cramdown plan.  The Code allows the Plan to bind non-accepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not discriminate unfairly, and is fair and equitable toward each impaired class that has not voted to accept the Plan.

You should consult your own attorney if a cramdown at confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.

C.    **Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a Chapter 7 liquidation.  The Debtor contends that if this case were a case under Chapter 7, then the Chapter 7 trustee would not liquidate any assets for the benefit of creditors and would not make any distribution to creditors.   More likely, in a hypothetical Chapter 7 case, Fifth Third Bank would obtain relief from the automatic stay and then continue its mortgage foreclosure action.   Fifth Third Bank would end up with the real property securing its claim, but there would be no other assets to liquidate for creditors and no distribution would be made to creditors.

D.    **Feasibility**

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

V.      **EFFECT OF CONFIRMATION OF PLAN**

      A.      *Discharge of Debtor*

On the Effective Date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the Effective Date, to the extent specified in §1141(d)(1)(A) of the Code, except that the Debtor shall not be discharged of any debt (i) imposed by the Plan, (ii) of a kind specified in §1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure, or (iii) of a kind specified in §1141(d)(6)(B).   After the Effective Date of the Plan your claims against the Debtor will be limited to the debts described in clauses (i) through (iii) of the preceding sentence.

      B.      *Modification of Plan*

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or re-voting on the Plan.

The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modifications after notice and a hearing.

      C.      *Final Decree*

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.   Alternatively, the Court may enter such a final decree on its own motion.

Respectfully submitted,

                    /s/ Kenneth D. (Chip) Herron, Jr.
                    Kenneth D. (Chip) Herron, Jr.
                    Fla. Bar No. 699403
                    Wolff, Hill, McFarlin & Herron, P.A.
                    1851 W. Colonial Dr.
                    Orlando, FL 32804
                    (407) 648-0058
                    (407) 648-0681 (fax)
                    kherron@whmh.com
                    Attorneys for the Debtor/Plan Proponent